## McGILL, Trustee v MILLER

Ohio Appeals, 2nd Dist, Franklin Co

No 2957. Decided April 7, 1939

David T. Keating, Columbus, for defendant-appellant.

Phil S. Bradford, Columbus, for plaintiff-appellee.

By GEIGER, J.

This matter is in this court upon appeal on questions of law from an order of the Court of Common Pleas sustaining a motion for a directed verdict in the sum of $2617.20 against the defendant-appellant by an entry made on the 11th day of July, 1938. This is the second time this case has been in this court.

In order to correctly understand the questions involved it is necessary to state the pleadings at some length.

The case had its inception in an action of Don R. McGill as trustee in bankruptcy upon a cognovit note for $1800.00 signed by E. R. Miller, defendant below. An answer was filed for the defendant by an attorney at law confessing judgment and judgment was entered upon such cognovit note in the sum of $1866.00 as a judgment by confession. Thereafter the defendant filed a motion for an order to set aside the judgment for the reason that the defendant was not summoned or notified of the action, and that the judgment was taken upon said note for more than was due; that the defendant was not indebted in any sum whatever, and that he has a full defense as shown by his attached answer. The answer attached to this motion admitted the execution of the note; that he signed the note against his wishes and after being illegally summoned by the referee in bankruptcy who unlawfully threatened to find him guilty of contempt unless he signed the note, and further that the sole consideration therefor was money lost by the defendant in gambling, to-wit, the purchase and sale of certain listed stocks on margin without intent of either party to make actual delivery; that the relation of Rutherford Company, the bankrupt, was not that of a broker only; that the company was not a member of a regular established stock exchange. Upon this motion the court on April 8, 1932, found that the answer tendered did not constitute a valid defense and that the

defendant was not entitled to have the judgment vacated. From this order of the court the defendant appealed to this court as plaintiff in error in cause No. 2338, and this court through Barnes, J., in a decision rendered on the 2nd day of November, 1933, held:

. "The answer as presented, if proven, contains a complete defense and under the circumstances we think that the court was in error in not permitting the same to be filed."
. "The sole and only question for the determination of this court is whether or not there was an abuse of discretion on the part of the trial court in refusing to open up the judgment and permit defendant to file answer and make defense."
"We think the court was in error in not opening up and permitting the answer to be filed."

. The cause was remanded to the Common Pleas Court. In an entry of November 25, 1933, this court decreed that the judgment of the Common Pleas Court overruling the motion be reversed; that the judgment in favor of the defendant in error and against the plaintiff in error on the warrant of attorney be vacated and the plaintiff in error be permitted to file the answer and that the issues be tried to a jury.
. Upon the cause being remanded defendant filed an amended answer admitting the execution and delivery of the cognovit note and alleging that the sole consideration was money lost by the defendant in gambling; that he and the Rutherford Company had mutual and numerous transactions which were wagers upon the course of the market; that the real agreement between the parties was that if the market should rise the defendant would pay Rutherford the losses or if the market should decline Rutherford would pay the defendant the profits; (the transactions of the defendant were short sales;) that the market advanced and the defendant paid to Rutherford certain sums to cover margins; that no

actual sale was made and that defendant was not at any time the owner of such stocks and did not intend to purchase the same; that on pretended purchases no stock was ever delivered to the defendant nor was any such delivery intended, that both parties well knew the purpose and intention, which was that all transactions were upon margin; that he disclosed to Rutherford Company his intention not to enter into a regular contract of sale or purchase but that it was on the contrary only his intention to gamble in stocks and securities; that Rutherford & Company was not a broker nor a member of a stock exchange and that said stocks were not bought nor sold in accordance with the rules of any stock exchange.

For a second defense he says that Don R. McGill as trustee in bankruptcy has sold and disposed of and therefore has no title to the alleged claim of said estate in bankruptcy against the defendant, and that the cause is not being prosecuted by the real parties in interest. He appends to his answer certain interrogatories which were answered by the plaintiff and will be noted later.

By an entry of July 2, 1938, it appears that the subject matter of the action has been transferred to Don R. McGill during the pendency of the suit and said McGill is substituted for the plaintiff and it is ordered that the action shall thereafter be carried in his name.

A lengthy reply was filed to the amended answer of the defendant, admitting numerous mutual transaction; that McGill as trustee in bankruptcy of Frank T. Rutherford has no title to the claim, but that the purchaser acquired the same about the 17th day of July, 1933, and is continuing the action in the name of the original party; denies that the note was given for an invalid consideration, or that its sole consideration was money lost by the defendant in gambling, and avers that the same was executed by the defendant in settlement of an earlier obligation which was found and adjudged by

the United States District Court, Southern Division of Ohio in cause No. 7443 in bankruptcy to be valid and enforceable and in pursuance of an order which said court made at the request of the defendant which is unreversed.

It is further alleged in the reply that prior to the 28th day of April, 1932, the trustee filed an action in the Court of Common Pleas of Franklin County in which he asked for judgment against the defendant on the account stated for $8000.00; that same was regularly assigned for hearing and as the trial was about to proceed the defendant made an offer in writing to the trustee that he would give the trustee a cognovit note for $2500.00 secured by certain shares, the action for the $8000.00, to be dismissed; that the judge of the Court of Common Pleas found that said offer was such a proposition as could be lawfully made, and ordered the trial discontinued; that plaintiff filed his application in bankruptcy praying for instruction as to whether he should accept the proposition; that that court found that the said proposition could be legally accepted and was to the interest of said trust and ordered the trustee to accept same; that the plaintiff notified the defendant and demanded the note and security offered which the defendant failed and refused to execute; that on July 5th, 1932 an application was filed in the United States District Court praying that defendant be ordered to appear before the Referee and testify concerning failure to carry out the proposition and that the plaintiff be instructed by the court as to what steps he should take. Thereupon the defendant was ordered to appear before the Referee and then claimed that he was under no valid obligation to comply with the proposition; that evidence was taken and the Referee there found that the defendant was obligated to comply with the terms of the proposition and that upon defendant's request there was an extension of time in which to pay the $2500.00 and the court ordered that the defendant, in consideration of the release from his

obligation to pay the $2500.00 note and the dismissal of the $8000.00 suit, should pay the trustee the sum of $700.00 and execute a promissory cognovit note for $1800.00 securing the payment by mortgage; that the defendant did pay said sum of $700.00 and executed said note and mortgage upon advice of his counsel, and thereafter the Court of Common Pleas made an order dismissing the $8000.00 suit.

It is alleged that the note for $1800.00 is the note described in the petition and by obtaining the approval of counsel to the dismissal of the case for $8000.00 on the order of the court the defendant has relieved himself from an asserted liability; that the order of the Common Pleas Court in continuing the cause and the finding of the United States Court that the proposition was lawful and ought to be accepted and its further finding that the proposition constituted an obligation, are all unreversed and unmodified. The defendant filed a motion to the reply asking that a large portion thereof be stricken. This motion was overruled in all its branches. The defendant also demurred to the reply. We find no entry disposing of this demurrer.

Upon this state of the case it came on for hearing before the court and a jury. Thereupon the attorneys for the plaintiff made a statement to the jury reciting the petition and the reply to the amended answer and also read the answer to the interrogatories to the effect that the plaintiff says that Rutherford was a member of a regular established Board of Trade and transacted business through a firm that was a member of the New York Stock Exchange. As to interrogatories in reference to the ownership of the claim the answer was that the trustee in bankruptcy had sold the claim for which the note was given to the McGill Company by virtue of an order of the Referee in Bankruptcy.

The statement on behalf of the defendant through his attorney consisted of reading the amended answer in full and noting the filing of the interroga-

tories and a statement to the effect that Miller in 1925 entered into a contract with the Rutherford Company for a fairly large amount of money and that many of their transactions were simply gambling transactions; that Miller sold the market short and put up $3000.00 in margins which was wiped out; that the transaction was a gambling transaction; that the $8000.00 was for increase in the value of the stocks from the time he sold them to the time they were closed out; that Rutherford Company went into bankruptcy and its books showed that Miller owed them $8000.00 for which a suit was brought against Miller, and upon the making of a compromise agreement the suit was dismissed with no judgment rendered; that the case was continued to give the trustee time to have the Federal Court approve of the settlement; that the court approved the settlement; there never was any judgment rendered in the Federal Court, simply the approval of the compromise. Upon such approval, the trustee came into Common Pleas Court and dismissed the suit against Miller. After that arrangement was made Miller decided that he would not go through with the compromise; that he would not pay $2500.00 that he had agreed to pay, and it. was therefore again brought into Federal Court after the case had been dismissed in Common Pleas Court. He paid $700.00 in cash and gave a note for $1800.00, this being after he had refused to go through with the $2500.00 agreement. He was brought into Federal Court not to get a judgment but for an order compelling him to pay what he had agreed to. He thereupon paid $700.00 and gave the $1800.00 note (the one now in suit). It was stated that he claimed that the original consideration was a gambling transaction, and being such, no compromise would have any more force than the original obligation; the whole obligation was null and void. That is his defense. The suit was dismissed after the note was given. Thereupon counsel for plaintiff stated,

"Now following the statement of the defendant's counsel plaintiff moves that the court instruct the jury to reutrn a verdict for plaintiff."

After a colloquy between the court and the attorneys the court stated,

"You admit there was a suit for $8000.00 that you settled by paying $700.00 in cash and a note for $1800.00?"
"COUNSEL FOR DEFENDANT: Yes, we admit that. That don't make any difference. That doesn't relieve it from the character of a gambling transaction a bit more than the other.
"THE COURT: The gambling transaction is out of it entirely. This is the settlement of a claim that they had."
"COUNSEL FOR DEFENDANT: It was not a settlement."
"THE COURT: Why, it was nothing else but a settlement * * * This is purely a settlement of a lawsuit. If he wanted to raise the question of the illegality of the transaction it should have been done in that suit but when he waived that by making a settlement * * * ".
"COUNCIL FOR DEFENDANT: No he didn't waive it. The question of illegality was set out as a defense in that suit. It was not waived."
"THE COURT: I know it was set up as defense but he waived it when he made the settlement."
"COUNSEL FOR DEFENDANT: There was nothing in the nature of res judicata; there was no judgment against him; it was just the same as if the suit had never been. In other words that suit was decided in his favor. The record will show that the suit was decided in his favor."
"THE COURT: They waived all their claim of $5500.00 against this man."

Thereupon the court instructed the jury to bring in a verdict in favor of the plaintiff on the note, stating,

"The court sustains the motion for this reason, that the note sued on was not a note given for a gambling trans-

action, irrespective of what the rules between the defendant and Rutherford were in the first place."

Thereupon counsel for defendant called attention to their defense that the sale of the McGill Company was illegal in that both Sinks, the Referee, and Mc-Gill, the trustee, were stockholders in the McGill Company. The Court, in answering stated that the record shows that McGill as an individual is now the owner of the claim. This was denied by counsel for the defendant. The Court further stated in the presence of the jury,

"The consideration for this note was the settlement of a claim for $8000.00, and therefore it is a valid consideration irrespective of what their relations were prior to that time; therefore the court has nothing else to do but to sustain the motion for a judgment and direct the jury to return a verdict. I have figured the amount at $2617.20."

As frequently occurs in cases where the action of the court in directing a verdict is drawn into question, counsel making the motion has failed to incorporate in the record that which, were it so incorporated, would relieve the situation of any doubt. In this case cousel for plaintiff stated in effect that there were papers in the bankruptcy court which would be exhibited to the jury during the trial, but no such papers appear in the record, and we are left somewhat in doubt as to the action of the bankruptcy court in relation to the transaction on the question, first, whether there was any finding of that court to the effect that on the evidence a compromise could be legally made by giving the $2500.00 note first in question, in settlement of a claim for $8000.00 which the defendant asserted to have grown out of a gambling transaction; and, second, as to whether there was an order or judgment of the bankruptcy court when the $700.00 in cash was paid and the note for $1800.00

was given which would clearly establish that the present note was free from the taint of gambling. The finding of the Court of Common Pleas was not rendered. Had such matters appeared in the record much of our labor would have been avoided.

### THE QUESTION

The question before us is, 1st, whether or not the court was correct in its instruction to the jury to return a verdict for the plaintiff on the ground that the $1800.00 note was not given for a gambling transaction, but for the settlement of a formerly asserted claim for a larger amount; and, second, whether or not irrespective of the court's reason his instruction was justified on the pleadings and statement of counsel.

We are first confronted with the opinion of this court that the defendant asserted a good defense to the cognovit note when he alleged that the action grew out of a gambling transaction. We think we can safely dispose of this matter by calling attention to the fact that the pleadings at that state did not disclose that the $1800.00 note was given in compromise of a larger claim arising out of stock transactions, the only question then determined was whether there was an abuse of discretion on the part of the trial court in refusing to open the judgment and permit defendant to file an answer, which if proven contained a complete defense.

The defendant seeks to be relieved from the payment of the note on the ground that it arises out of a gambling transaction and that attracts our attention to the law of Ohio in reference to contracts based upon such transactions.

Sec. 13069, GC to 13082, GC are statutes covering "bucket shops", and they may be briefly summarized as following, without specifically stating the number of the statute:

Whoever contracts to have or give to himself or another the option to sell or buy at a future time any commodity or stock of any company shall be fined,

and all contracts made in violation of a penal section shall be void, but provision of such section shall only apply to contracts where the intent of the parties is that there shall not be a delivery of the commodity sold but only a payment of the difference by the party losing upon the rise or fall of the market.

It shall not be necessary in order to commit the offense that both buyer and seller shall agree to do any acts therein prohibited but such offense shall be complete against a person thus pretending or offering to sell or buy, whether the offer is accepted or not.

One section provides the duties of the broker as to statements that must be made by him. A definition of the word "margin" is given to the effect that sales on margins are illegal.

**Sec. 5965, GC** provides that all contracts when the whole or any part of the consideration is for money won or lost upon a game of any kind are void and of no effect.

**Sec. 5966, GC** provides that a person losing on a wager and who pays a part thereof to the winner that such person so losing may sue within six months and recover from the winner,

"Provided however that neither this section nor §5969, GC shall apply to any business transacted upon a regularly established stock exchange or board of trade or member thereof whose relation to the transaction is that of broker only, and who actually delivers or receives the securities or other commodity bought or sold in accordance with the rules and regulations of said stock exchange or board of trade."

There are many cases in Ohio which are to the effect that where a person deals with a broker and buys or sells commodities or stock without the intention of receiving or delivering the commodities so bought or sold, that such transaction is a gambling transaction and falls within both the statutory and common law condemnation of gambling, and further that such transactions fall

within the provision of the present §5965, GC, holding that gaming contracts are void. These cases may be noted briefly as follows:

**Conn, Jr. v Walton, 46 Oh St 195,** where it is held that contracts for the sale of property to be delivered at a future date, if the parties intend the property shall be delivered are valid though the seller has not the goods or means of getting them other than to go upon the market and buy them; but when the real intention of the parties is merely to speculate on the rise and fall of prices, and the property is not to be delivered, but one party is to pay the other the difference between the contracting price and the market price of the goods at the time specified for executing the contract the transaction is against public policy and void. The case further holds that checks given for losses are tainted with the vice of their origin and subject to all the infirmities of securities given for illegal consideration. It is held that a plaintiff who founds his cause of action on an illegal or immoral act has no standing in a court of equity and where both parties have been engaged in an unlawful transaction the court will leave both to their strict legal rights.

**In Lagonda National Bank v Partner, 46 Oh St 381,** it is held that the endorsee of a check given for money lost at a game of chance can not recover upon it against the drawer though a bona fide holder for value. A check so drawn is absolutely void and of no effect.

The case of **Lester v Buel, 49 Oh St 240,** holds that a contract whereby one of the parties is to have the option to buy or sell at a future time a certain commodity on the understanding of both that there is to be no delivery, the party losing to pay the other the difference in market price, is by common law as well as by statute a gambling contract and void.

In **King v Horton, 116 Oh St 205,** it was held that a contract between parties for buying and selling on margin without the intent of delivering the

244

commodity is a gambling device falling within the condemnation of the statute.

In the case of **Otis v Thompson, 4 Oh Ap 61** it was held that in an action to recover money lost in margin or wagering transactions in stocks it is competent to prove that back of the form in which the transactions were clothed there existed a mutual intention not to complete the transaction by a payment in full and delivery but to rest on the rise and fall of the market values. The Court holds: It may be conceded that it was a necessary part of the plaintiff's case to prove a mutual intention of both parties to deal in margins only, * * * it is therefore quite important to determine whether there was sufficient evidence either direct or circumstantial to justify the submission of the case to the jury.

The case of **Hawke v Roberts, 13 Oh Ap 198,** holds that in order to invalidate as a wagering contract an agreement which on its face is legitimate, both contracting parties must have understood and intended it to be a wager. A transaction which on its face is legitimate can not be held void as a wagering contract by showing that one party only so understood and meant it to be. The proof must go further and show that this understanding was mutual, that both parties so understood the transaction.

In the case of **Kainker v Aberegg, 40 Oh Ap 43,** opinion by Williams, J., now on the Supreme Bench, it is held that a cognovit note based on alleged debt arising from gambling transactions is void. A cognovit note given to take up a note previously given for the same amount, both based upon a gambling transaction, is void.

In the case of **Spring Valley National Bank v Somers, 9 O. N. P. N. S. 481,** it is held that the negotiable instrument act does not repeal the section providing that contracts for options shall be held void; and a note given in furtherance of such a contract is not enforceable even though in the hands of an innocent holder for value.

These statutes and decided cases

clearly establish the law as to gambling contracts in the State of Ohio, but in none have we found a decision upon the exact point here in issue, as to whether, where the matter in suit was a compromise of a larger claim asserted by the defendant to have arisen out of a gambling contract such smaller amount is still tainted with the original infirmity, or whether it is as a matter of fact a claim based upon an agreement of the parties in the settlement of a suit and is free from the original taint, and as to the effect of an order of a court as here alleged.

The motion in this case for judgment on the pleadings and statement of counsel is based in part on §11601, GC, which provides that when upon the statements in the pleadings or upon the evidence received upon the trial one party is entitled to judgment, judgment shall be so rendered by the court.

Without again reciting the facts in the case but considering the whole matter from every angle, we have arrived at the conclusion that the court did not err in instructing the jury as he did. After reading the pleadings and hearing the statements of counsel, reasonable minds could only arrive at the conclusion that the plaintiff was entitled to recover.

Judgment affirmed. Cause remanded.

HORNBECK, PJ, and BARNES, J., concur.